·ls/9715Complaint2.wpd

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
———————————————————————X

BRESLIN REALTY DEVELOPMENT CORP.,

                      Plaintiff,

      -against-

MARTIN SCHACKNER and ILANA
YEROUSHALMI a/k/a NAZILA YEROUSHALMI,
and JOHN DOE #1 through JOHN DOE #5, the true
identity of such defendants being unknown, the
parties intended being persons and/or entities who
participated with the other named defendants in the
commission of the fraudulent and unlawful acts
alleged to have been committed herein,

                    Defendants.
———————————————————————X

**COMPLAINT**

Index No.  O5-OO1115

Plaintiff, BRESLIN REALTY DEVELOPMENT CORP., by its attorneys, Dollinger,

Gonski & Grossman, complaining of the defendants, respectfully show to this Court and allege as

follows:

**PARTIES:**

1.    BRESLIN REALTY DEVELOPMENT CORP. ("BRDC") is, and at all times

hereinafter mentioned was, a domestic corporation formed under the laws of the State of New York,

with its principal place of business located at 500 Old Country Road, Garden City, New York.

2.    Defendant, MARTIN SCHACKNER ("SCHACKNER") is a resident of the

County of Suffolk, State of New York.

3.    Defendant, ILANA YEROUSHALMI a/k/a NAZILA YEROUSHALMI

("YEROUSHALMI") is a resident of the State of New York.

1

.ls/9715Complaint2.wpd

## FACTS RELEVANT TO ALL CAUSES OF ACTION:

4.     For more than fifty (50) years, BRDC has conducted business activities within the State of New York and in various other States involving the purchase, sale, leasing, management and development of real property for commercial and residential use.

5.     At all times herein mentioned, BRDC has additionally conducted business activities as a licensed real estate broker within the State of New York and in other States.

6.     At all times herein mentioned, Wilbur F. Breslin, has been the sole shareholder and the President of BRDC.

7.     At all times herein mentioned, BRDC has provided services as a management company which involved the supervision, control and servicing of shopping centers, office buildings, residential premises and vacant property.

8.     In its capacity as a management company, BRDC had responsibility for the supervision, payment and control of substantial sums of money belonging to Wilbur F. Breslin, Wilbur F. Breslin family members and non-family persons.

9.     At all times herein mentioned, Wilbur F. Breslin was the only individual authorized to approve salaries and all other benefits which were to be provided to each of the employees of BRDC.

### (a) SCHACKNER

10.     Upon information and belief, at all times herein mentioned, SCHACKNER, was and is a Certified Public Accountant ("CPA").

2

· ls/9715Complaint2.wpd

11.    On or about the 18th day of July, 1988, SCHACKNER entered into an oral employment agreement whereby SCHACKNER was hired by BRDC to perform the duties of Comptroller.

12.    It was agreed by and between SCHACKNER and BRDC, that in consideration for his employment, SCHACKNER would be paid a salary on a bi-weekly basis, would be entitled to two (2) weeks vacation, and would receive certain other benefits of employment consistent with those of other employees of BRDC ("SCHACKNER Contract").

13.    SCHACKNER was also appointed an Executive Vice President of BRDC.

14.    In or about 1994, SCHACKNER was promoted to the position of Chief Financial Officer ("CFO") of BRDC.

15.    As CFO of BRDC, SCHACKNER had and was at all times aware of his fiduciary obligations to BRDC.

16.    SCHACKNER, as CFO of BRDC, oversaw the financial activities relating to the (a) affairs of BRDC, (b) affairs of entities owned by Wilbur F. Breslin family members and (c) affairs of entities owned by non-family members of Wilbur F. Breslin so that on a regular basis, SCHACKNER:

(i)    supervised the receipt of all funds due and payable to and from BRDC, Wilbur F. Breslin and Wilbur F. Breslin related corporations, limited liability companies, tenancies in common, fee ownerships and partnerships;

(ii)    supervised the payment of all employee salaries and employee benefits;

3

ls/9715Complaint2.wpd

(iii)    supervised wire transfers of funds by and among BRDC and related entities;

(iv)    supervised the receipt, classification and payment of all vendor invoices;

(v)    supervised the collection of all rent due from tenants and the billing to tenants of appropriate Common Area Maintenance ("CAM") charges, allocable real estate taxes and insurance charges.

(vi)    supervised the payment of all real estate taxes;

(vii)    supervised the establishment and monitoring of bank accounts;

(viii)    participated in the negotiation of terms of mortgages for acquisition and construction purposes, and participated in the negotiation of the refinance of mortgage loans affecting the various parcels of real property in which BRDC, Wilbur F. Breslin and/or related entities were owner/participants;

(ix)    oversaw the Accounting Department;

(x)    interacted with the Property Management Department, Commercial Leasing and Development Departments, as well as BRDC's in-house legal staff of the Legal Department;

(xi)    reviewed proposed real estate transactions of BRDC and other Wilbur F. Breslin entities in terms of financing and financial matters;

(xii)    maintained and updated the books and records of BRDC and other Wilbur F. Breslin entities;

4

·ls/9715Complaint2.wpd

(xiii)   supervised the financial affairs of BRDC as Trustee relating to the 401(k) retirement program existing for the benefit of all BRDC employees; and

(xiv)   participated in the establishment of Rules and Regulations affecting the financial activities of BRDC and related entities.

17.    SCHACKNER was not an authorized signatory on any checking account(s) maintained in the name of BRDC, Wilbur F. Breslin or any entity in which Wilbur F. Breslin or a family member of Wilbur F. Breslin had any interest, except:

(i)    a BRDC-Cafeteria Account (Flex Plan); and

(ii)    a BRDC Broker's Account.

### (b) "MARY ROE"

18.    At all times herein mentioned, "Mary Roe" was a CPA.

19.    On or about April 16, 1990, a non-party defendant in this action ("Mary Roe") entered into an oral employment agreement whereby Mary Roe was hired as an employee of BRDC to provide services to BRDC as Assistant Comptroller of the Accounting Department, under the supervision of SCHACKNER.

20.    Mary Roe was, as part of employee activities, required to participate in the conduct of all of the financial affairs of BRDC as was required to be performed by the Accounting Department.

21.    In consideration for the employment it was agreed that Mary Roe would be paid a salary on a bi-weekly basis, would be entitled to two (2) weeks vacation, and would receive

5

other benefits of employment consistent with those of other employees of BRDC similarly situate ("Mary Roe Contract").

### (c) YEROUSHALMI

22.     Commencing in or about November, 1993, YEROUSHALMI entered into an oral employment agreement with BRDC.

23.     Initially, YEROUSHALMI was employed to provide services in the Accounting Department of BRDC under the supervision of both SCHACKNER and MARY ROE, as an accounts payable clerk.

24.     It was agreed by and between YEROUSHALMI and BRDC that in consideration for her employment YEROUSHALMI would be paid a salary for her services on a bi-weekly basis, would be entitled to two (2) weeks vacation and would receive other benefits of employment consistent with those of other employees of BRDC similarly situate ("YEROUSHALMI Contract").

25.     In or about 1999, YEROUSHALMI was promoted by SCHACKNER, with the prior approval of Wilbur F. Breslin, to the position as Assistant to the Controller of BRDC.

26.     In or about 2001, YEROUSHALMI assumed primary responsibility for overseeing cash and payroll functions on behalf of BRDC under the supervision of SCHACKNER.

### (d) BRDC POLICIES

27.     SCHACKNER, YEROUSHALMI and Mary Roe when hired by BRDC were each required to provide services to BRDC during usual and customary business hours and to

6

provide all services in a manner consistent with policies regarding such employment as established by BRDC.

28.     At all times herein mentioned, the salary and benefits to be paid to each of the defendants were only to be established and controlled by BRDC.

29.     At all times herein mentioned, the vacation policy established by BRDC was that all employees of BRDC were permitted vacation periods as follows: (i) two (2) weeks during the first five (5) years of employment; (ii) three (3) weeks during years six (6) through ten (10) of employment and (iii) four (4) weeks after ten (10) years of employment.

30.     BRDC employees, including the defendants, did not receive separate and distinct Vacation Pay from BRDC as vacation time was included in their Gross Salary paid by BRDC.

31.     At all times herein mentioned, the payment of payroll for all BRDC employees was prepared by the employer payroll servicing company, Automatic Data Processing, Inc. ("ADP") predicated upon specific information provided to ADP by the defendants.

32.     BRDC maintained a separate and distinct Payroll Account to pay its employees upon which account ADP would draw checks.

33.     Defendants were not signatories on the Payroll Account.

34.     As part of their job responsibilities,, the defendants were responsible for transferring sufficient funds to be wire-transferred from various Wilbur F. Breslin owned or controlled bank accounts into the Payroll Account against which ADP would draw checks ("Wiring Activities").

7

35.     As part of their job responsibilities, the defendants and Mary Roe were required to provide all employee salary and benefit information to ADP.

36.     As part of their job responsibilities, SCHACKNER, YEROUSHALMI and Mary Roe were required to provide accurate information to ADP relating to all employee salaries and employee benefits, in order that all compensation and employee benefits were accurately reflected in the checks prepared by ADP.

37.     In or about 1991, BRDC instituted a 401(k) Retirement Plan for the benefit of the employees of BRDC.

38.     At the time of the establishment of the BRDC 401(k) Plan, Wilbur F. Breslin, as President, Chairman of the Board and sole shareholder of BRDC made a determination that BRDC would contribute "matching" sums of money in conformity with controlling statute for the benefit of employees ("Matching Contribution").

39.     As part of their job responsibilities, the defendants were required to provide all the BRDC 401(k) Retirement Plan information to the appropriate entities.

## AS AND FOR A FIRST CAUSE OF
## ACTION AGAINST ALL OF THE DEFENDANTS

40.     Plaintiff repeats and realleges each and every allegation heretofore stated in Paragraphs designated "1" through "39" of this Complaint as if fully set forth at length herein.

41.     Commencing in or about 1996, SCHACKNER and Mary Roe, without the knowledge or approval of BRDC, set upon a course of conduct which resulted in the breach of the SCHACKNER Contract, YEROUSHALMI Contract and Mary Roe Contract with BRDC by committing the following acts:

8

1s9715Complaint2.wpd

     (i)    In 1996, SCHACKNER paid himself an annual gross salary in excess of the sum of $125,000.00 approved by BRDC, by causing vacation pay ("Vacation Pay") to be paid to himself in the sum of $19,230.00.[1]

     (ii)    In 1997, SCHACKNER caused Mary Roe to be paid an annual gross salary in excess of the authorized salary of $43,500.00 as approved by BRDC by causing ADP to pay to Mary Roe an additional sum of $8,082.43, which included "Vacation Pay" of $3,625.00.

     (iii)    In 1997 SCHACKNER caused to be paid to himself an annual gross salary in excess of his authorized salary of $150,000.00 by causing himself to be paid an additional $29,760.00, which included "Vacation Pay" in the amount of $19,711.00.

     (iv)    In 1998, SCHACKNER caused Mary Roe to be paid an annual gross salary in excess of the authorized salary of $43,472.00 by causing Mary Roe to be paid an additional $20,187.00, which included "Vacation Pay" of $7,528.00 and a $3,000.00 "Bonus."

     (v)    In 1998, SCHACKNER caused himself to be paid an annual gross salary in excess of the sum of $150,000.00 authorized by BRDC by paying SCHACKNER an additional $77,812.58, which included "Vacation Pay" of $34,615.44.

     (vi)    In 1999, SCHACKNER caused Mary Roe to be paid an annual gross salary in excess of the sum of $48,000.00 approved by BRDC by paying Mary Roe an additional sum of $21,240.00 of which $13,846.00 was recorded as "Vacation Pay," together with an additional sum of $3,500.00 recorded as a "Bonus" without the approval or consent of BRDC.

---

[1] Vacation Pay is utilized by ADP as a category of monitoring vacation periods. The defendants used this ADP category as part of their fraudulent and illegal scheme to secrete the payment of huge sums of money unlawfully taken from the plaintiffs.

(vii)    In 1999, SCHACKNER caused himself to be paid an annual gross salary in excess of the sum of $150,000.00 approved by BRDC by paying SCHACKNER an additional sum of $70,784.00, which included $35,192.00 in "Vacation Pay."

(viii)    In 1999, SCHACKNER, without the authorization or approval of BRDC prepared and signed a manual check, drawn on the Payroll Account, an account upon which he had no authority to sign checks, payable to himself in the amount of $20,000.00.

(ix)    In 1999, the defendants caused YEROUSHALMI to be paid an annual gross salary in excess of the sum of $48,100.00 per year approved by BRDC by paying YEROUSHALMI the additional sum of $13,388.10.

(x)    In 2000, SCHACKNER caused Mary Roe to be paid an annual gross salary in excess of the sum of $48,000.00 per year approved by BRDC by paying Mary Roe an additional sum of $33,538.13, which included the sum of $19,692.16 labeled "Vacation Pay."

(xi)    In 2000, the defendants caused SCHACKNER to be paid an annual gross salary in excess of the sum of $150,000.00 approved by BRDC by paying SCHACKNER an additional sum of $81,672.38, which included the amount of $46,730.84 labeled "Vacation Pay."

(xii)    In 2000, the defendants caused YEROUSHALMI to be paid an annual gross salary in excess of her authorized salary of $55,900.00 by paying YEROUSHALMI an additional sum of $25,759.00, which included the amount of $7,000.00 labeled "Vacation Pay."

(xiii)    In or about the Spring, 2001, Mary Roe voluntarily terminated employment with BRDC and without the authorization or approval of BRDC, the defendants caused Mary Roe to be paid "Vacation Pay" in the amount of $30,153.00 prior to resignation.

10

(xiv)   In 2001, the defendants caused SCHACKNER to be paid an annual gross salary in excess of his authorized salary of $150,000.00 per year by paying SCHACKNER an additional sum of $76,732.42, which included "Vacation Pay" in the amount of $30,576.96.

(xv)   In 2001, the defendants caused YEROUSHALMI to be paid an annual gross salary in excess of her authorized salary of $65,000.00 per year by paying to YEROUSHALMI an additional sum of $27,229.78, which included $10,475.00 in "Vacation Pay."

(xvi)   In 2002, the defendants caused SCHACKNER to be paid an annual gross salary in excess of his authorized salary of $150,000.00 by paying SCHACKNER an additional sum of $58,107.00, which included "Vacation Pay" of $15,000.00 and a "Bonus" of $20,000.00.

(xvii)   In addition to the aforesaid, on December 27, 2002, without BRDC approval, the defendants caused a separate payroll run to be made for SCHACKNER as a result of which SCHACKNER was paid an additional sum of money, through ADP.

(xviii)   SCHACKNER also drew four (4) manual checks without BRDC's authorization. These activities resulted in an additional unauthorized payment to SCHACKNER of $27,000.00.

(xix)   In 2002, the defendants caused YEROUSHALMI to be paid an annual gross salary in excess of her authorized salary of $71,250.00 by paying YEROUSHALMI an additional sum of $16,534.24, which included "Vacation Pay" in the amount of $14,626.00.

(xx)   In 2003, the defendants caused YEROUSHALMI to be paid an annual gross salary in excess of the authorized salary of $75,500.00 by paying YEROUSHALMI the additional sum of $25,759.00, which included $7,000.00 labeled "Vacation Pay."

11

(xxi)   In 2003, the defendants caused SCHACKNER to be paid an annual gross salary in excess of the authorized salary of $150,000.00 by paying SCHACKNER the additional sum of $72,954.00.

(xxii)   In 2003, the defendants caused YEROUSHALMI to be paid an annual gross salary in excess of her authorized salary of $75,500.00 by paying YEROUSHALMI the additional sum of $25,663.00.

(xxiii)   In 2003, the defendants caused BRDC to pay a Matching Contribution to her 401(k) for the benefit of YEROUSHALMI in the amount of approximately $8,000.00, which sum substantially exceeded the amount that was agreed upon by BRDC to be contributed to said fund.

(xxiv)   During that portion of 2004, in which the defendants were employed by BRDC, SCHACKNER and YEROUSHALMI continued their common scheme and/or plan and/or larcenous activities by taking sums of money to which they were not entitled, the amount of which has not as yet been determined.

42.   The defendants regularly wired funds into the Payroll Account in amounts required to fund the proper and authorized sums to be paid for payroll and regularly increased the amount wired to accommodate payment of the unauthorized sums paid to each of them.

43.   The employment of defendants, SCHACKNER and YEROUSHALMI, was terminated by BRDC in 2004.

12

44.     Each of the payments that were paid to the defendants, in excess of the authorized contractual amounts BRDC agreed to pay the respective defendants, were paid in violation of the terms of the SCHACKNER Contract and YEROUSHALMI Contract.

45.     BRDC has performed each of the obligations on its part to be performed pursuant to each of the subject Employment Contracts.

46.     Each of the respective defendants failed to comply with the terms and conditions of their Employment Contract with BRDC.

47.     Plaintiff, BRDC, has been damaged in an amount exceeding $500,000.00, no part of which has been repaid although duly demanded.

## AS AND FOR A SECOND CAUSE OF
## ACTION AGAINST ALL OF THE DEFENDANTS

48.     Plaintiff repeats and realleges each and every allegation heretofore stated in Paragraphs designated "1" through "47" of this Complaint as if fully set forth at length herein.

49.     The defendants, as employees of BRDC had an obligation to maintain the books and records of BRDC in an accurate manner so as to properly evidence the payment of agreed upon compensation to all employees, consistent with the contractual relationship established between each respective employee and BRDC.

50.     Defendants have failed to maintain the books and records of BRDC in an accurate manner and have participated in (i) the falsification of such records, (ii) the dissemination of inaccurate information and, (iii) the taking of huge sums of money for their own benefit, all to the detriment of BRDC and Wilbur F. Breslin, in an amount to be ascertained by the Court.

13

51.     The defendants, having devised the aforestated scheme and artifice to defraud, and for the purpose of executing and attempting to execute the scheme and artifice to defraud, and for the purpose of obtaining money and property by means of false and fraudulent pretenses, representations and promises, did knowingly transmit, and cause others to transmit, by means of wire communications in interstate commerce, funds in amounts exceeding the true amounts required to pay the appropriate sums due from BRDC to all employees, in order to fund the excessive sums of money they took for themselves.

52.     Defendants should be compelled to account for all of their improper and illegal activities from 1996 to date, and upon their providing an accounting, should then be compelled to pay to the plaintiff all of the sums of money belonging to plaintiff that have been converted, stolen, secreted and otherwise taken for their own benefit in violation of contract, fiduciary obligation and criminal statutes.

53.     Plaintiff has no adequate remedy at law.

## AS AND FOR A THIRD CAUSE OF
## ACTION AGAINST ALL OF THE DEFENDANTS

54.     Plaintiff repeats and realleges each and every allegation heretofore stated in Paragraphs designated "1" through "53" of this Complaint as if fully set forth at length herein.

55.     Upon information and belief, commencing in or about 1996, the defendant, SCHACKNER entered into a conspiracy with Mary Roe and possibly others for purposes of committing a fraud upon the plaintiff so as to unlawfully take and/or by means of misrepresentation,

14

trick and/or device, convert to their own use and benefit huge sums of money belonging to the plaintiff.

56.     Upon information and belief, commencing in or about 1999, YEROUSHALMI joined in the conspiracy previously created by SCHACKNER and another or others, so as to continue and expand upon the fraudulent activities relating to the taking of funds and assets belonging to plaintiff.

57.     Defendants intentionally falsified reports and records so as to cause plaintiff to believe that all sums of money being paid to all employees were being paid in accordance with their respective agreements.

58.     Defendants knowingly and intentionally misrepresented the true state of facts relating to the payment of payroll and other matters in furtherance of their fraud and conspiracy with the intent of deceiving the plaintiff into believing that all payroll payments and related sums were being paid in accordance with the contracts existing between the defendants as employees of BRDC.

59.     In or about the month of July, 2004, plaintiff became aware of the illegal and fraudulent conduct committed by the defendants and of the huge sums of money that the defendants had secreted, stolen and/or otherwise fraudulently taken from the plaintiff without consent and in violation of the law.

60.     Plaintiff has been damaged as a consequence of the fraudulent conduct committed by defendants in an amount exceeding the sum of $500,000.00, the exact amount of which is unknown at the present time, but which sum plaintiff requests be determined by the Court at the time of a trial of this matter.

15

## AS AND FOR A FOURTH CAUSE OF
## ACTION AGAINST ALL OF THE DEFENDANTS

61.     Plaintiff repeats and realleges each and every allegation heretofore stated in Paragraphs designated "1" through "60" of this Complaint as if fully set forth at length herein.

62.     In or about 1991, BRDC initiated a 401(k) Retirement Program for all of its qualified employees.

63.     As a part of the 401(k) Retirement Program established for the benefit of BRDC employees, BRDC agreed to contribute a sum of money to each of the respective employee 401(k) accounts equal to the contribution annually made by the respective employee as permitted by the statute controlling such contributions ("Matching Contributions").

64.     In furtherance of such agreement, Matching Contributions have been paid by BRDC with the consent of Wilbur F. Breslin for the benefit of the respective employees since in or about the calendar year 1991.

65.     Matching Contributions are based in part on the amount of an employee's gross annual salary.

66.     As a consequence of the intentional and unlawful increase in the sums of money paid to the defendants by BRDC for salary and "Vacation Pay" in each year since 1996, BRDC unwillingly and unknowingly paid excessive Matching Contributions to the 401(k) accounts of the respective defendants.

67.     Excessive Matching Contributions may also have been paid to other employees of BRDC as yet unknown, and sued herein as JOHN DOE #1 through JOHN DOE #5.

16

68.     As a result of the fraudulent conduct committed by the defendants, BRDC paid substantial sums of money to the 401(k) program in excess of the sums of money which it had agreed to pay as Matching Contributions.

69.     As a result of the fraudulent and unlawful conduct committed by the defendants, plaintiff has been damaged in an amount to be ascertained by the Court at the time of the trial of this matter.

## AS AND FOR A FIFTH CAUSE OF
## ACTION AGAINST ALL OF THE DEFENDANTS

70.     Plaintiff repeats and realleges each and every allegation heretofore stated in Paragraphs designated "1" through "69" of this Complaint as if fully set forth at length herein.

71.     Prior to July 1, 1999, BRDC agreed to and did provide SCHACKNER with a car allowance for the leasing of a motor vehicle that he would use for business purposes ("Car Allowance").

72.     SCHACKNER was to use the funds received as a Car Allowance to pay for the expense of his automobile.

73.     Defendants controlled the drawing of checks upon the Payroll Account from which the Car Allowance was paid.

74.     For a period of time, until July 1, 1999, the Car Allowance was paid to SCHACKNER in conformity with his agreement with BRDC.

75.     Commencing in or about July 1, 1999, the defendants used BRDC funds to pay vendors the monthly expenses allocable to the leasing of the motor vehicle used by SCHACKNER, while continuing to pay to SCHACKNER the Car Allowance through ADP.

17

76.     As a consequence of the fraud committed by defendants relating to the Car Allowance, BRDC unknowingly paid substantial sums of money to SCHACKNER which he was not entitled to be paid.

77.     Plaintiff has been damaged in an amount exceeding $25,000.00, the exact amount to be determined at the time of the trial of this matter.

## AS AND FOR A SIXTH CAUSE OF
## ACTION AGAINST ALL OF THE DEFENDANTS

78.     Plaintiff repeats and realleges each and every allegation heretofore stated in Paragraphs designated "1" through "77" of this Complaint as if fully set forth at length herein.

79.     Each of the defendants in performing their services as an employee of BRDC had contact with numerous vendors who provided goods and services used by BRDC in connection with its business activities ("Vendors").

80.     Upon information and belief, the defendants caused some of the Vendors to deliver goods and/or to provide services such as computer equipment, video equipment, sound equipment, electrical equipment, home improvement services, landscaping and other items and services not now known to plaintiff to their homes or to the office premises for the defendants' personal use.

81.     The items of personal property and/or services provided by the Vendors as aforesaid, were not authorized to be ordered or paid for by BRDC.

82.     Defendants' actions resulted in the loss of substantial additional sums of money by BRDC.

18

83.   Plaintiff has been damaged in an amount not known at the present time but in an amount exceeding the sum of $25,000.00.

## AS AND FOR A SEVENTH CAUSE OF
## ACTION AGAINST ALL OF THE DEFENDANTS

84.   Plaintiff repeats and realleges each and every allegation heretofore stated in Paragraphs designated "1" through "83" of this Complaint as if fully set forth at length herein.

85.   By virtue of the actions of the defendants, defendants have been unjustly enriched in an amount not known at the present time but in an amount exceeding the sum of $1,000,000.00.

## AS AND FOR A EIGHTH CAUSE OF
## ACTION AGAINST ALL OF THE DEFENDANTS

86.   Plaintiff repeats and realleges each and every allegation heretofore stated in Paragraphs designated "1" through "85" of this Complaint as if fully set forth at length herein.

87.   The course of conduct describe above constitutes a violation by each of the defendants of §§1962(b)(c) and (d) and 1964 of the Racketeer Influence and Corrupt Organization Act (18 U.S.C. §1961, et seq.) ("RICO").

88.   The defendants engaged in a pattern of wrongful conduct involving mail fraud and wire fraud by unlawfully converting sums of money belonging to BRDC in violation of law and by intentionally secreting, fictionalizing and falsifying business records so as to conceal the unlawful and criminal conduct committed by each of them, both in violation of Federal and State Statutes and in violation of their contractual and/or fiduciary obligations to BRDC.

19

ls/9715Complaint2.wpd

### Predicate Acts.

89.   **Mail Fraud**: the conduct of SCHACKNER, YEROUSHALMI and Mary Roe described herein constitutes mail fraud in violation of 18 U.S.C. §1341 in that:

(a)   the defendants participated in a scheme or artifice to defraud or attempt to defraud plaintiffs;

(b)   the defendants, or someone associated with the scheme, used the mails or caused the mails to be used, by placing or causing a letter to be placed in an authorized depository for mail intended to be sent or delivered by the United States Postal Service; and

(c)   the use of the mails was for the purpose of executing the scheme.  In that regard, the United States mails were used in connection with:

(i)   the mailing of communications by and between the offices of BRDC and ADP;

(ii)   the unauthorized signing of manual checks by SCHACKNER on the Payroll Account and the mailing of such checks to various payees;

(iii)   the mailing of checks and purchase orders to various vendors of goods which BRDC was unknowingly paying for, which were provided for the benefit of defendants;

(iv)   the payment by mail of all funds related to the Car Allowance;

(v)   the payment by mail to all vendors of sums of money for the unauthorized purchase of goods and services;

20

90.   **Wire Fraud**: The conduct of the defendants described herein constitutes wire

fraud in violation of 18 U.S.C. §1343 and 1346 in that the defendants, having devised the aforestated

schemes and artifice to defraud, and for purposes of executing and attempting to execute the scheme

and artifice to defraud, and for purposes of obtaining money and property by means of false and

fraudulent pretenses, representations and promises, did knowingly transmit and cause others to

transmit by means of wire communications in interstate commerce, certain signals, that is, wire

transfers of funds and telefax communications in violation of Title 18 of the United States Code and

in furtherance of the RICO Conspiracy.

91.   **Pattern Of Racketeering Activity**.   As described herein, defendants engaged

in numerous acts of racketeering activity within ten (10) years of each other.  The predicate acts and

other wrongful conduct of the defendants described herein were related in the sense that they

involved the same or similar purposes, results, participants, victims and methods of commission, and

did not involve isolated or sporadic events.  There was continuity of conduct in that the predicate acts

and other wrongful activities of the defendants described herein extended over a regular ongoing and

considerable period of time and involved the threat of continuing wrongful activities and conduct.

92.   **Enterprise**.  Pursuant to 18 U.S.C. §1962(b), the defendants have engaged

in the pattern of racketeering activity described herein to commit criminal acts of larceny to benefit

each of the defendants individually and in conspiracy with one another within the meaning of 18

U.S.C. §1961(4).

93.   Further, pursuant to 18 U.S.C. §1962(c), defendants, Mary Roe and possibly

other persons referred to herein as JOHN DOE #1 through JOHN DOE #5 have participated in an

21

associational enterprise-in-fact affecting interstate commerce. The associational enterprise was devoted to the commission of acts of larceny by trick and/or device and was formed for the purpose of carrying out the activities alleged in this Complaint. The enterprise is an on-going organization and functions as a continuing unit. The purpose of the enterprise is to accomplish the theft of huge sums of money from the plaintiff for the benefit of defendants.

94.     Defendants and other persons not specifically identified herein have conducted the affairs of this enterprise through the pattern of racketeering activity described herein.

95.     Defendants participated in varying capacities in the fraudulent scheme to fraudulently take funds belonging to the plaintiffs for their own benefit in violation of law.

96.     Defendants willfully associated with each other in the scheme to defraud plaintiff and did intentionally combine and conspire and agree together and with each other and with other co-conspirators, to violate Title 18, United States Code, §1961, et seq.

97.     As set forth above, defendants committed numerous fraudulent and wrongful acts which constitute mail fraud and wire fraud.

98.     The defendants knew about and agreed to facilitate each other, and provided knowing and substantial assistance toward the accomplishment of each other's wrongful and fraudulent goal.

99.     In addition, the defendants aided and abetted with each other in the mail fraud and wire fraud described herein.

100.     Accordingly, pursuant to 18 U.S.C. §1962(d) and 18 U.S.C. §2, the defendants are liable as principals and co-conspirators.

22

101.   **Injury**. Although the fraudulent conspiracy described herein was directed primarily at plaintiff, the other victims of the defendants' fraudulent scheme are all persons who have been injured in their business or property by reason of a violation of 18 U.S.C. §1962 by the fact that the plaintiff has been deprived of huge sums of money that have been secreted, stolen and otherwise taken from plaintiff in violation of both Federal and State Statute.

102.   Pursuant to 18 U.S.C. §1964(c), plaintiff is entitled to recover from the defendants treble its actual damages in the sum of at least $2,000,000.00, together with costs and disbursements, and reasonable attorney's fees.

WHEREFORE, the plaintiff demands judgment as follows:

(a)   on the First Cause of Action, Judgment against the defendants in the sum of at least $500,000.00 plus interest, costs and disbursements of this action and attorney's fees;

(b)   on the Second Cause of Action, Judgment against defendants directing the defendants to judicially account for their wrongful conduct and upon such accounting, to be compelled to pay plaintiffs all of the damages to which plaintiffs are entitled to be paid;

(c)   on the Third Cause of Action, Judgment against the defendants in the sum of at least $500,000.00 plus interest, costs and disbursements of this action and attorney's fees;

(d)   on the Fourth Cause of Action, Judgment against defendants in the amount to be determined at the trial of this matter, together with the costs and disbursements of this action and attorney's fees;

(e)   on the Fifth Cause of Action, Judgment against the defendants in the sum of at least $25,000.00 plus interest, costs and disbursements of this action and attorney's fees;

23

ro/9715Summons.wpd

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
————————————————————————X

BRESLIN REALTY DEVELOPMENT CORP.,

                                        Plaintiff,            **SUMMONS**

        -against-                                            Index No.  05- 001115

MARTIN SCHACKNER and ILANA                                   Date Filed:  1/25/05
YEROUSHALMI a/k/a NAZILA YEROUSHALMI,
and JOHN DOE #1 through JOHN DOE #5, the true
identity of such defendants being unknown, the
parties intended being persons and/or entities who
participated with the other named defendants in the
commission of the fraudulent and unlawful acts
alleged to have been committed herein,

                                        Defendants.
————————————————————————X

TO THE ABOVE-NAMED DEFENDANTS:

        You are hereby summoned and required to serve upon plaintiff's attorneys an answer

to the Complaint in this action within twenty (20) days after the service of this Summons, exclusive

of the day of service, or within thirty (30) days after service is complete if this Summons is not

personally delivered to you within the State of New York.  In case of your failure to answer,

judgment will be taken against you by default for the relief demanded in the Complaint.

        Venue is based upon the principal place of business of the plaintiff located in the

County of Nassau and State of New York.

Dated: Carle Place, New York
       January 25, 2005              DOLLINGER, GONSKI & GROSSMAN
                                     Attorneys for Plaintiff

                        By:          _____
                                     MATTHEW DOLLINGER, ESQ.
                                     A Member of the Firm
                                     One Old Country Road
                                     P.O. Box 9010
                                     Carle Place, New York 11514
                                     (516) 747-1010